J-S61002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: M.A.H.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.R., FATHER | No. 919 EDA 2017 |

Appeal from the Order Entered February 14, 2017
In the Court of Common Pleas of Delaware County
Orphans' Court at No(s): 025-2016

BEFORE: LAZARUS, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 23, 2017**

M.R. ("Father") appeals from the order, entered in the Court of Common Pleas of Delaware County, granting Mother's petition to involuntarily terminate Father's parental rights to the parties' minor child, M.A.H.R. ("Child") (born 4/2009), pursuant to 23 Pa.C.S.A. § 2511(a)(1). After our review, we affirm.

Mother and Father are not married. On September 23, 2013, the court entered a custody order granting Mother primary physical custody and granting Father partial physical custody. *See* Order, 9/23/13. The order required the parties to resume co-parenting counseling and specified review on December 9, 2013.

On February 11, 2014, the court modified the custody order, changing Father's Sunday custody from noon to 7:00 p.m. to 11:00 a.m. to 6:00 pm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

*See* Order, 2/11/14. That order also provided that Father shall have one phone call per day with Child, and that the "[p]arties shall immediately resume co-parent counseling with Mr. DeMayo for a minimum of 5 sessions or until released by Mr. DeMayo." On March 5, 2015, the court entered an order suspending Father's partial custody rights for failing to attend co-parenting counseling pursuant to the February 11, 2014 order. Order, 3/5/15.

On February 11, 2016, Mother filed a petition to terminate Father's parental rights. The court held a hearing on November 30, 2016. Mother argues the evidence supported termination of Father's parental rights under section 2511(a)(1) because Father failed to perform parental duties or had evidenced a purpose of relinquishing parental claim to Child in excess of six months prior to the filing of the petition for involuntary termination of his parental rights. Mother testified that she and Father attended one co-parenting counseling session together. N.T. Termination Hearing, 11/30/16, at 15. She also testified that Father had not seen Child since 2013. *Id.*

Father testified that, as of September 2015, he was employed, part-time, with the Philadelphia School District; he also stated that he had just been offered full time employment that week (November 30, 2016). *Id.* at 74. Prior to that time, from 2010 to 2015, Father was employed by the Philadelphia Parking Authority. *Id.* He stated that as a result of the various hearings and co-parenting counseling sessions that he was required to attend, he had lost his job with the Philadelphia Parking Authority, was unemployed from April 2015 to September 2015, and was unable to pay support. *Id.* at

- 2 -

75. Father testified that he had been in court for custody litigation at least fifteen times in seven years. *Id.* at 82. In the spring of 2016, Father attempted to modify support. He explained:

Q: And you recall being ordered to attend co-parenting classes. Is that correct?

A: Yes.

Q: Did you attend co-parenting classes?

A: Yes.

Q: When did you attend co-parenting classes?

A: Over the course of the last three years, at least six to ten sessions with two different counselors.

＊ ＊ ＊ ＊

Q: Okay. Very well. When was the last co-parenting class that you attended?

A: It had to be spring of 2014. I want to say April or May, either March or April, 2014.

Q: Okay.

A: Or '15.

Q: Okay. The co-parenting classes that you attended, who paid for those classes?

A: I did.

Q: Okay. And if you recall, at what rate were they?

A: They were one hundred twenty-five dollars a session, and I told him about my financial hardship and he kind of knocked it down to about eighty-five a session, but it was still expensive because we actually had one, we went to three sessions in one month. . . . Which was past my rate. So it was very expensive.

*Id.* at 79-81. Father continued:

- 3 -

Q: Will you tell the court why you didn't continue to attend co-parenting?

A: They were becoming increasingly expensive, and I asked the counselor about it. We went to the sessions and I told him I didn't have the money[.] He didn't take too kindly to it, and, basically, a verbal altercation came between me and him. That's when co-parenting counseling ceased.

\* \* \* \*

Q: What was the last thing the custody court told you?

A: To go to the co-parenting, with the same counselor. I had no problem with the co-parenting counseling.

Q: Would you be able to pay for co-parenting counseling at this point?

A: Yes.

*Id*. at 95-97.

Father also testified that, as of the hearing date, he did not know where Mother and Child were living, and that it "seemed like the family doesn't want me to have any involvement with [C]hild." *Id.* at 88-89. He did admit, however, that he did have Mother's cell phone number, but had not received any messages from Mother since 2014, and that he got no response from his text messages, meant for Child, that he had sent to her number. *Id.* at 89-90.

Father stated that Mother has filed "three to five" petitions for Protection from Abuse (PFA) against him, and that they were filed after he had filed for custody. *Id.* at 84-85. None of the PFA orders became permanent. Father testified that he has never been arrested, with the exception of failing to pay child support in the summer of 2016. *Id.* at 85-86. Father testified that he

- 4 -

wanted to be a part of Child's life, and that his family would like to have contact with Child. *Id.* at 88, 92-95.

On cross-examination, Father acknowledged that he failed to show up for the custody hearing on January 20, 2016, and that he lost custody as a result. *Id.* at 100-01, 105-06. Father also admitted that he failed to appear for a custody hearing in March 2014, and he failed to appear for a hearing on his petition to modify custody on March 9, 2015. *Id.* at 104.

Maternal grandparents and paternal grandmother testified. Maternal grandmother testified that she felt threatened by Father when she witnessed Father verbally abusing Mother. *Id.* at 119-21. Maternal grandfather, a pastor, testified that: he has been the pastor of Mount Olive Church in Trainer, Pennsylvania, for thirteen years; he is involved with Child in church and school activities; and he is there to support Mother and Child, financially and emotionally. *Id.* at 63.

Paternal grandmother testified that she lives in St. Louis, Missouri, and works for a regional airline and is able to travel to Philadelphia regularly. *Id.* at 107. She also stated that: she has only seen Child a few times since his birth; she would like to have contact with Child; she believes Father can care for Child; and she tried to contact Mother by "friending" her on Facebook, but received no response. *Id.* at 108-15.

At the conclusion of the hearing, the trial court entered a final order terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a). Father appealed, and he raises the following issue for our review:[1]

> Whether the trial court erred in entering an order terminating Father's parental rights where Mother failed to provide sufficient evidence to grant termination under 23 Pa.C.S.A. § 2511(a)(1)?

The following statutory language governs termination of Father's parental rights in this case:

> **§ 2511. Grounds for involuntary termination**
>
> (a) General Rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> \* \* \* \* \* \*

---

[1] We note that Father's brief on appeal is missing page 4, which is listed in the Table of Contents as containing his Statement of the Issue Involved. We have taken Father's issue from his Pa.R.A.P. 1925(b) statement of errors complained of on appeal, filed April 11, 2017, and the trial court's opinion. *See* Opinion, 5/17/17, at 9-10. We also note that Father failed to file his Rule 1925(b) statement concomitantly with his Fast Track notice of appeal, as required by Pa.R.A.P. 1925(a)(2), and instead filed it pursuant to the trial court's order. We will not find waiver for this procedural defect. *See In re K.T.E.L.*, 983 A.2d 745 (Pa. Super. 2009) (failure to file Rule 1925(b) statement concomitantly with children's fast track appeal, although considered defective notice of appeal, will not be grounds for dismissal since failure to file statement is a violation of procedural rule, not court order).

(b) Other considerations.— The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A § 2511(a) (1), (b). *See In the Interest of C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000).

In an involuntary termination of parental rights proceeding, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994) (citing *Santosky v. Kramer*, 455 U.S. 745, (1982)). The standard of "clear and convincing" evidence is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re A.L.D.*, 797 A.2d 326, 336 (Pa. Super. 2002). It is the trial court, not this Court, that is charged with the responsibility of evaluating the credibility of the witnesses and resolving any conflicts in testimony. *In re Adoption of R.J.S.*, 901 A.2d 502, 506 (Pa. Super. 2006). The trial court is free to believe all, part, or none of the evidence. *Id.* If the court's factual findings are supported by the record, "appellate courts review to determine if the trial court made an error of law or abused its discretion." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012).

We may reverse based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* "We may not reverse, however, merely because the record would support a different result." *Id.* at 827.

The focus of the termination proceeding is on the conduct of the parent and whether his conduct justifies termination of parental rights. *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001); *In re Child M.*, 681 A.2d 793, 797 (Pa. Super. 1996). Although it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. *In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999) (internal citations omitted). The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination. *Id.* at 285. *See Adoption of M.S.*, 644 A.2d 1370 (Pa. Super. 1995) (failure of parent to have contact with child for six months will not automatically forfeit that parent's rights). *See also In re Shives*, 525 A.2d 801, 803 (Pa. Super. 1987) (where non-custodial parent faces termination of parental right, court must consider non-custodial parent's explanation for apparent neglect, including whether custodial parent has deliberately created obstacles and erected barriers intended to impede communication and association between non-custodial parent and child).

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental right on the child pursuant to Section 2511(b). *Matter of Adoption of Charles E.D.M., II*, 70 A.2d 88, 91 (Pa. 1998).

Here, Father does not dispute that he failed to perform parental duties for the six months preceding Mother's filing of her February 11, 2016 petition. The trial judge, the Honorable Kathrynann W. Durham, found that Father last saw Child in 2013. Findings of Fact and Conclusions of Law, 2/14/17, at ¶¶ 15-16. The trial court, therefore, went on to consider Father's explanations for his failure to perform parental duties, his subsequent contact with Child and the effect of termination on Child. *E.D.M.*,*II*, *supra*.

Father argues that Mother's "accusations of abuse have served as an excuse" to prevent Father from knowing where Mother and Child reside and prevent him from getting to know Child. Appellant's Brief, at 18. However, Judge Durham specifically found that "[t]here was no evidence that Mother and her family deliberately created obstacles or erected barriers with the intent to prevent Father from communicating and associating with Child." Trial Court Opinion, 5/17/17, at 12. The trial court found that Father had texted Mother, stating he did not want to be in Child's life, and he wanted his name

off the child's birth certificate. *Id.* at ¶ 23; N.T. Termination Hearing, 11/30/16, at 18-19.[2]

With respect to post-abandonment contact, the record indicates only that Father attempted to make contact through a birthday text message to Child, which he sent to Mother's phone, and to which he received no response. *Id*. at 89-90. Judge Durham also found that Father did not appear for scheduled custody and support hearings, despite notice, and did not cooperate with court-ordered co-parenting counseling.

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

---

[2] The March 1, 2014 text provides, in full:

> I don't understand why you do this. Why did you even have him? All I am is a sperm donor. You don't have to be putting me and my family through this. You could have went to a sperm bank. You treat him like he doesn't have a dad. And if that's the case, I need you take me off child support. I need you to legally change his name, and I want my name off the birth certificate. I'm not doing this for 18 years. Someone will contact you. Whatever I have to do to not be a part of this BS anymore.

N.T. Custody Hearing, 11/30/16, at 19; Plaintiff's Exhibit 3.

***In re B.,N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004).

We agree with the trial court that Father's financial difficulties and frustration with the system do not excuse him from parental responsibilities. Father's failure to attend court-ordered co-parenting counseling and failure to attend hearings also factored into the court's determination that his explanations fell short. Essentially, Father failed to act with reasonable firmness to pursue his partial custody. ***Id.*** Unlike the cases involving lengthy incarceration, serious crimes, substance abuse, or mental health issues, the facts that converged to create this situation are atypical, but nonetheless result in Child being without a Father for three years. "A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1276 (Pa. Super. 2003). We are bound by the court's findings that are supported in the record, and, as an appellate court, we cannot reverse simply because the record would support a different result. ***S.P.***, ***supra***.

Finally, the court concluded that "there is no emotional bond between Father and Child because of Father's refusal to comply with the Custody Orders."[3] ***See In re Adoption of G.L.L.***, 124 A.3d 344, 347 (Pa. Super. 2015) (major aspect of section 2511(b) analysis is status of parent-child bond

---

[3] Father did not preserve a challenge related to section 2511(b) as he failed to present argument in his brief and, as noted above, failed to include a Statement of Issues in his brief. ***See*** fn. 1, ***supra***. ***See also In re Adoption of R.K.Y.***, 72 A.3d 669, 679 n.4 (Pa. Super. 2013 (declining to address Section 2511(b) where not challenged on appeal). Nevertheless, in light of the requisite bifurcated analysis, we do not find waiver here.

and effect that severance of bond would have on child). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. Further, from Father's failure to perform his parental duties for three years, his non-compliance with court orders, his failure to attend custody hearings and his failure to affirmatively foster a relationship with Child, the court could properly infer that there was no emotional bond between Father and Child. *See In re K.Z.S.*, 946 A.2d 753, 762–63 (Pa. Super. 2008) (where there is no evidence of bond between a parent and child, it is reasonable to infer that no bond exists). Where there is no bond, termination would not have a detrimental impact on Child. 23 Pa.C.S.A. § 2511(b).

The record supports the court's finding that Mother met her statutory burden of establishing that Father evidenced a settled purpose of relinquishing his parental claim to Child and that termination would best serve Child's needs and welfare. 23 Pa.C.S.A. §§ 2511(a)(1), (b). We, therefore, affirm the order terminating Father's parental rights.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/2017

- 12 -